UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DE'ADRIAN C. BOYKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-00610-TWP-DML |
| | ) |
| JASON GRIFFITH, MICHELLE LAFLOWER, | ) |
| PAUL TALBOT, JASON ERNEST, and | ) |
| MATTHEW SARTEN, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING STATE DEFENDANTS' AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT, AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff De'Adrian Boykins ("Mr. Boykins") initiated this civil rights action pursuant to 42 U.S.C. § 1983, alleging the Defendants violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs. For the reasons explained in this Order, Mr. Boykins' Motion for Summary Judgment, (Dkt. 63), is **denied**, the Motion for Summary Judgment filed by Matthew Sarten ("Sergeant Sarten"), Jason Ernest ("Lieutenant Ernest"), and Jason Griffith ("Sergeant Griffith") (collectively, the "State Defendants"), (Dkt. 64), is **denied**, and the Motion for Summary Judgment filed by Paul Talbot, M.D. ("Dr. Talbot") and Health Services Administrator, Michelle LaFlower ("HSA LaFlower"), (collectively, the "Medical Defendants"), (Dkt. 69), is **granted**.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version

of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and need not "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). The court will consider each party's motion individually to determine whether that party has satisfied the summary judgment standard. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Celotex*, 477 U.S. at 324).

## II. FACTUAL BACKGROUND

The following statement of facts has been evaluated pursuant to the standards set forth above. The facts are considered undisputed except to the extent that disputes are noted.

Mr. Boykins is a Type 1, insulin-dependent diabetic whose lack of glucose control places him in the category of "brittle diabetes." (Dkt. 64-1 at 53; Dkt. 71-1 at 10.) Brittle diabetes most often occurs in active young men, in part, due to the "dawn phenomenon," which is an abnormal

early-morning increase in blood sugar caused by the body releasing hormones, such as cortisol, glucagon, and epinephrine, that impair the action of insulin. (Dkt. 71-1 at 10.)

On November 21, 2018, Mr. Boykins was suspected to be under the influence of an unknown substance and was transported via wheelchair to the medical unit for observation. (Dkt. 64-1 at 73.) While there, Mr. Boykins was "laughing and slurring words" and told medical staff that he had "smoked s[om]ething." *Id*. A conduct report followed the incident, and as a result, Mr. Boykins was transferred from a general population unit to a restricted housing unit ("RHU"). (Dkt. 64-2 at 12-13.) At the time of Mr. Boykins' transfer to the RHU, his treatment plan involved the administration of insulin three times a day. (Dkt. 64-1 at 74.) Mr. Boykins was dependent on custody staff or medical staff to either bring his insulin to the RHU or transport him to the medical unit to receive insulin there. (Dkt. 64-2 at 28.)

Throughout Mr. Boykins' placement in the RHU, nurses from the medical unit visited the RHU twice a day, providing Mr. Boykins insulin in the morning before breakfast and in the evening before dinner. (Dkt 64-2 at 15.) However, Mr. Boykins did not routinely receive a midday insulin shot for the period of time he was housed in the RHU. (Dkt. 64-2 at 15.) As a result of the lack of insulin, Mr. Boykins suffered from severe headaches, nausea and vomiting, loss of appetite, dehydration, constant urination, leg cramps, fatigue, and shortness of breath. *Id*. at 35.

During Mr. Boykins' time in RHU, each the State Defendants served as officers in the RHU and had interactions with Mr. Boykins with regard to his blood sugar and medical treatment. Mr. Boykins complained to the State Defendants that he was not receiving his midday insulin shot, and he was advised by the State Defendants that the medical staff was responsible for visiting the RHU to provide the midday insulin treatments. (Dkt. 64-2 at 33-34, 47.) Specifically, on December 7, 2018, Mr. Boykins told Sergeant Sarten that he "really needed insulin because … the symptoms he was having were getting worse". (Dkt. 63 at 8.) He also informed Sergeant Griffith and

Lieutenant Ernest that he was not receiving his insulin and was suffering symptoms. They responded that it was "medical[']s job to come to the cell house". *Id* at 8-10. When Mr. Boykins complained to HSA LaFlower, she informed him that "custody staff" was responsible for transporting him to the medical unit for his midday insulin and that she would "reach out to custody." (*See* Dkt. 63-1 at 4; Dkt. 71-3 at 2.)

At all times relevant to this matter, Dr. Talbot was the physician treating Mr. Boykins' diabetes. While in RHU, certain changes to Mr. Boykins' diabetes treatment occurred, including an increase in the number of units of insulin to be administered in the morning, multiple one-time orders of additional insulin to address elevated blood sugar numbers, and a modification reducing the number of insulin administrations from three times daily to two times daily. (Dkt. 64-1 at 5, 12, 25, 27, 34, 41, 47, 57; Dkt. 64-2 at 25; Dkt. 71-1 at 2-11.) Dr. Talbot's adjustments to Mr. Boykins' insulin were "aimed at reducing the[] swings" in his blood sugar level that are typified by brittle diabetes. (Dkt. 71-1 at 10.)

### III. DISCUSSION

At all times relevant to Mr. Boykins' claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Pursuant to the Eighth Amendment, prison officials have a duty to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but

disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Deliberate indifference in this context is "something akin to recklessness." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Mr. Boykins has moved for summary judgment on all of his claims. (Dkt. 63.) The State Defendants and Medical Defendants have also separately filed motions for summary judgment on Mr. Boykins' deliberate indifference claims, (Dkt. 64, Dkt. 69, respectively). The Court will address each of these motions in turn, discussing Defendants claims together where appropriate.

### A. Medical Defendants' Motion for Summary Judgment

The Medical Defendants have moved for summary judgment, arguing the undisputed evidence shows that they did not demonstrate deliberate indifference to Mr. Boykins' serious medical needs. Specifically, the Medical Defendants argue that because Mr. Boykins impermissibly relies on a theory of *respondeat superior* in the claims alleged against them, they are entitled to summary judgment. (*See* Dkt. 70 at 19-20.) The Court agrees.

For a medical practitioner, deliberate indifference can be shown by a "treatment decision that is 'so far afield of accepted professional standards' that a jury could find it was not the product of medical judgment." *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). However, a plaintiff may be able to "establish a departure from minimally competent medical judgment where a prison official persists in a course of treatment known to be ineffective." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). And "[i]f a prison doctor chooses an easier and less efficacious treatment without exercising professional

judgment, such a decision can also constitute deliberate indifference." *Id.* (internal citations and quotations omitted).

Here, Mr. Boykins does not allege that Dr. Talbot and HSA LaFlower are not minimally competent professionals. Rather, he bases his argument on a theory of vicarious liability. Specifically, Mr. Boykins attempts to confer *respondent superior* liability on Dr. Tablot and HSA LaFlower for failing to act in a supervisory role to ensure that the insulin schedule ordered by Dr. Talbot was carried out by other prison personnel, specifically the nurse practitioners who administer the injections. (*See* Dkt. 63 at 2-3; Dkt. 76 at 5-8.) But Mr. Boykins may not recover damages under Section 1983 on a theory of vicarious liability. *See Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."); *see also Harris v. Ghosh*, 2012 WL 3903894 (N. D. Ill. Sep. 7, 2012) (holding that physicians were not liable for failing to supervise the technicians who irregularly delivered the plaintiff's insulin because "agency principles of *respondeat superior* and vicarious liability do not apply to 1983 claims.") (citing *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *Monell v. N.Y. City Dep't Soc. Servs*. 436 U.S. 658, 691 (1978)).

To the extent that Mr. Boykins attempts to argue in his reply brief that Dr. Talbot violated acceptable standards of care by adjusting Mr. Boykins' insulin regimen for a "non-medical reason," (Dkt. 76 at 4-5), his assertions are unsupported by citations to admissible evidence or pertinent authority and therefore waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"); *see also Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived."). Even if this argument were not waived, Mr. Boykins has presented no evidence to dispute Dr. Talbot's sworn testimony that the

"insulin adjustments were aimed at reducing the[] swings" of his blood sugar level caused by Mr. Boykins' brittle diabetes and related "dawn phenomenon". (Dkt. 71-1 at 10.) Rather, Mr. Boykins' own deposition testimony supports Dr. Talbot's position. (*See* Dkt. 64-2 at 17 (describing his request that Dr. Talbot "adjust [his] insulin" because the midday insulin shot was not being administered consistently).)

For all of the above reasons, the Medical Defendants are entitled to judgment as a matter of law. Accordingly, their Motion for Summary Judgment, (Dkt. 69), is **granted**.

B. **State Defendants' Motion for Summary Judgment**

Next, the State Defendants, who are all non-medical prison staff, argue that they are entitled to summary judgment because they reasonably deferred to the judgment of the prison's medical personnel. (*See* Dkt. 65 at 7-8.) The Court disagrees.

As stated above, prison officials violate the Eighth Amendment if they are "deliberately indifferent to prisoners' serious medical needs." *Arnett* 658 F.3d at 750. "Generally, non-medical staff must comply with medical directives[.]" *Leiser v. Kloth*, 9333 F.3d 696, 705 (7th Cir. 2019). It is not unreasonable for non-medical prison staff to assume that a treating physician will order what it medically necessary for an inmate. *Id.*; *see also Arnett*, 658 F.3d at 755 (recognizing non-medical prison staff "will generally be justified in believing that the prisoner is in capable hands" when relying on expertise of medical personnel); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("As a practical matter, it would be unwise to require more of a nonmedical staff member" than reliance on prison medical staff, as "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments"). Non-medical are "entitled to defer to the judgment of jail health professionals so long as [they] do not ignore [the inmate]." *Berry*, 604 F.3d at 440. Nevertheless, a non-medical official may be liable for knowingly disregarding an excessive risk to an inmate's safety, such as through the denial

of, delay of access to, or interference with the inmate's medical treatment. *See Giles v. Godniez*, 914 F.3d 1040, 1050-51 (7th Cir. 2019) (discussing whether "non-medical defendants knew of and disregarded an excessive risk to [the plaintiff's] health and safety"); *see also Burks v. Raemisch*, 555 F.3d 591, 595 (7th Cir. 2009) (explaining that deliberate indifference would exist where non-medical staff "prevent[ed] the medical unit from delivering needed care").

Mr. Boykins asserts, and the State Defendants do not dispute, that he complained to each of them that he was not getting his midday dose of insulin, he was suffering symptoms, and he needed transport or someone to come to the cell house to treat him. Despite the State Defendants' knowledge of Mr. Boykins' medical plight, Mr. Boykins went several days in segregation without being transported so that his insulin could be properly adjusted. Thus, he argues, the State Defendants knowingly disregarded an excessive risk to his health and safety.

Here, issues of material fact exist that preclude summary judgment on Mr. Boykins' claims against the State Defendants. Specifically, triable issues of fact remain as to whether the State Defendants knowingly disregarded an excessive risk to Mr. Boykins' safety by preventing the medical unit from administering Mr. Boykins' midday dose of insulin. In their brief, the State Defendants concede that they "did not provide transport for midday [i]nsulin injections" but they maintain that they had "no obligation or responsibility to do so since midday injections should have been provided by health care staff." (Dkt. 65 at 5.) However, this naked assertion, absent citation to admissible evidence, does not establish that the State Defendants were not instructed to transport Mr. Boykins to the medical unit for midday injections. Similarly, the grievance response provided by Mr. Boykins establishes only that HSA LaFlower informed Mr. Boykins that "custody staff" was responsible for transporting him to the medical unit for his midday insulin and that she would "reach out to custody." (*See* Dkt. 63-1 at 4.) It does not establish whether the State

Defendants were the "custody staff" to which HSA LaFlower referred or that they knowingly denied, delayed access to, or otherwise interfered with Mr. Boykins' medical treatment.

Because issues of material fact exist bearing on whether the State Defendants knowingly disregarded an excessive risk to Mr. Boykins' health by failing to transport him to the medical unit to receive his midday insulin, a grant of summary judgment on Mr. Boykins' claims against the State Defendants is not appropriate. *Celotex Corp.*, 477 U.S. at 323. Furthermore, because Mr. Boykins' right not to have non-medical personnel deny, delay, or otherwise interfere with his medical treatment is a clearly established right, *see Burks*, 555 F.3d at 595, the State Defendants are not entitled to qualified immunity. Accordingly, the State Defendants' Motion for Summary Judgment, (Dkt. 64), is **denied**.

### C. Mr. Boykins' Motion for Summary Judgment

For the same reasons that the Medical Defendants are entitled to summary judgment, Mr. Boykins is not. Furthermore, as explained above, issues of material fact exist that preclude summary judgment with respect to Mr. Boykins' claims against the State Defendants. Accordingly, Mr. Boykins' Motion for Summary Judgment, (Dkt. 63), is **denied**.

### V. CONCLUSION

The Medical Defendants' Motion for Summary Judgment, (Dkt. [69]), is **GRANTED**. The **Clerk is directed** to terminate Dr. Paul Talbot and Michelle LaFlower as defendants.

Mr. Boykins' and the State Defendants' Motions for Summary Judgment, (Dkt. [63], Dkt. [64], respectively), are **DENIED**. Mr. Boykins' claims against the State Defendants will be resolved through settlement or trial. The **Magistrate Judge is requested** to set this matter for a status conference to determine how the action shall proceed.

Mr. Boykins is currently unrepresented by counsel. The Court, *sua sponte*, reconsiders Mr. Boykins' Motion for Assistance with Recruiting Counsel (*see* Dkt. 48). That Motion is

9

**GRANTED** to the extent that Mr. Boykins still requests the Court's assistance recruiting counsel. Accordingly, **Mr. Boykins is directed** to notify the Court **by no later than Friday, April 16, 2021**, whether he wishes the Court to recruit counsel on his behalf for the purpose of settlement or trial.

    **SO ORDERED.**

Date: 3/26/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

De'Adrian C. Boykins, #201883
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, Indiana  46064

J. Derek Atwood
INDIANA ATTORNEY GENERAL'S OFFICE
derek.atwood@atg.in.gov

Michael J. Blinn
INDIANA ATTORNEY GENERAL'S OFFICE
michael.blinn@atg.in.gov

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jarod Zimmerman
KATZ KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com